The next case this morning is 523-1229, People v. Burns. Arguing for the appellant is Rachel Cincinnati. Arguing for the appellant, I mean for the athlete, is Becky Ray. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. How are you all? Good morning. Thank you. Before we get started, I just want to make sure if, you know, I'm looking at my notes procedurally. I believe there's, let's just say two issues, or maybe three issues. But I think the state has conceded regarding the unreasonable issue, unreasonable counsel, and that the, like I said, looking at my notes, that the defendants rebutted the presumption of the Rule 605 certificate, correct? Your Honor, we've conceded the issue that counsel was unreasonable for not attaching the evidentiary affidavits of two witnesses. That would support his compulsion defense. You are correct. Okay. And I just want to make that clear. I mean, I'm not trying to keep you all from arguing anything you want to. But if we don't need to go down a road, there's no reason to, unless Justice Scholar or Justice Vaughn may or may not have questions or whatnot. So, and if I've stepped on any toes from Justice Scholar or Vaughn, just please let me know. We're via Zoom, so you can't get to me anyway. So, with that, Ms. Sansonetti, go right ahead with your argument. Thank you. Good morning, Your Honors, Counsel. My name is Rachel Sansonetti from the Office of the State Appellate Defender, arguing on behalf of Appellant Dr. Brian Burns. Dr. Burns raises two issues. First, that he received unreasonable assistance of counsel. And second, that the court erred in dismissing his claims that trial counsel was ineffective for failing to call material witnesses, put forth a compulsion defense, and preventing Dr. Burns from testifying. Because of the state's concession that we just discussed, Dr. Burns is entitled to relief. So the question before this court is simply what relief he should receive. This court can either, one, remand the entire petition to restart second stage proceedings. Or two, remand to second stage with instructions that the claims Dr. Burns raised on appeal established a substantial showing of a constitutional violation. Although the state has conceded that counsel was unreasonable, it argues this court should affirm the lower court's dismissal of his argument that trial counsel was ineffective for preventing Dr. Burns from testifying. But Illinois Supreme Court precedent does not allow reviewing courts to affirm the dismissal of claims when there is a finding of unreasonable assistance. People v. Turner held that remand is required after a finding of unreasonable assistance because it would be improper to affirm the circuit court's dismissal since it's unknown whether the court would have dismissed the petition had counsel adequately performed his duties. Likewise, People v. Addison has held that remand is required regardless of the merits of the claims. Thus, this court cannot affirm the circuit court's dismissal of Dr. Burns' ineffective argument for preventing him from testifying. But nothing prevents this court from reversing the circuit court's order and finding that Dr. Burns made a substantial showing that counsel was ineffective for failing to call material witnesses, present a compulsion defense, and preventing Dr. Burns from testifying. And for simplicity, I will split these arguments into two groups. So first, counsel was ineffective for failing to call Ron Yarber and Brown and present a compulsion defense. Notably, in its response, the state did not address the substance of these claims. Instead, it took the position that this argument was not right for the court to consider because it is inextricably intertwined with Dr. Burns' unreasonable assistance of counsel claim. And even though remand to second stage is required, as I mentioned, nothing prevents this court from determining Dr. Burns has made a substantial showing that counsel was ineffective. A finding of trial strategy before an evidentiary hearing in this case is premature because nothing in the record supports that counsel failed to call witnesses and present a compulsion defense for strategic reasons. Dr. Burns' petition alleges what Brown and Yarber would have testified to, and nothing in the record supports the circuit court's reasoning that this was trial strategy. So an evidentiary hearing is necessary to determine whether counsel was ineffective or made strategic decisions. Therefore, on remand to second stage, this court should include directions to advance this claim to a third stage hearing after proper second stage proceedings are conducted. But at the very least, the court's dismissal order must be reversed, and this claim needs to go back to second stage proceedings. And moving to Dr. Burns' argument that counsel was ineffective for preventing him from testifying, this court should also find that Dr. Burns made a substantial showing on this claim. At trial, the circuit court asked Dr. Burns if he understood he had the right to testify. Dr. Burns said yes, and the court turned its attention to defense counsel, who said he had nothing further. The defense admitted stipulated exhibits and rested. After trial, Dr. Burns fired his attorney and appeared before the court unrepresented. At that time, he told the court he wanted to testify, but defense counsel had prevented him from doing so. This court should rely on people v. Whiting, which is very similar to the facts here. In Whiting, the defendant filed a post-trial motion and testified counsel insisted she not testify, and she explained she did not contemporaneously object because she did not believe she could speak directly to the court while represented by counsel. The appellate court noted the defendant had promptly raised the issue rather than waiting for post-conviction proceedings, had not been admonished by the court, and the defendant's testimony was uncontroverted. Here, Dr. Burns promptly raised the issue at a post-trial status hearing, where Dr. Burns appeared unrepresented. He told the court he wanted to testify, but his attorney never told him to take the stand. And Dr. Burns raised the issue again during his statement in elocution. Dr. Burns also was not asked by the court whether he wanted to testify, just whether he understood that he could. Now, admittedly, the court is not required to ask this, so we are not arguing the court erred in its admonishments. But the trial court's decision not to ask Dr. Burns whether he wanted to testify created a record that does not rebut Dr. Burns' claim. If the court had asked Dr. Burns whether he wanted to testify, and Dr. Burns responded no, then this claim would be meritless. But instead, we have to take Dr. Burns' allegations in the petition as true, because his claim is not rebutted by the record. And the record provides an explanation for why Dr. Burns did not contemporaneously object. Dr. Burns attempted to interject during jury selection, and his attorney responded, Dr. Burns apologized and did not interject again. The state mentions in its response that Dr. Burns felt comfortable talking to the court because he responded when addressed. But Dr. Burns' argument here is not that he was afraid to speak to the court at all. Rather, it's that he felt he could not interrupt proceedings while represented by counsel. Dr. Burns was respectful throughout proceedings, and after being told to speak with his attorney instead of interrupting, Dr. Burns apologized and remained silent, no longer speaking out of turn. However, at the first court date without counsel, Dr. Burns informed the court that defense counsel had violated his right to testify. Cases relied on by the circuit court in dismissing Dr. Burns' claim and cases the state relies on in its reply all involve claims that were raised for the first time on appeal. But again, Dr. Burns raised this issue well before sentencing and actually raised it for a second time during his statement in elocution. And importantly, there's nothing more that Dr. Burns can establish without counsel's testimony for this claim. So a third stage evidentiary hearing is necessary. So we would ask the court also for this claim to remand to second stage with directions that Dr. Burns established a substantial showing of a constitutional violation. But again, at the very least, it must be remanded to second stage. If this court does not have any questions, I will finish my argument on rebuttal. Thank you, counsel. Just to show her, Justice Fong, do you have any questions? No questions. Didn't Dr. Burns deny throughout that he committed this crime? So how do you allege compulsion, which is what those other witnesses are going to bring up if you deny it? It's kind of like entrapment. You can't say I didn't do it, but if I did, I was entrapped. You can't say I didn't do it, but if I did, I was compelled to or there was compulsion involved. So how does he get around that contradiction? Sure. So Dr. Burns' argument that he didn't do it is not necessarily that he didn't speak with Strickland and speak with the undercover officer. It's that he didn't have the intent. This was never something that was actually going to happen. And so our position is that it's not a contradiction. It's just a bit of a nuanced difference. Let me ask you about the incident where Dr. Burns corrected the court and told them when the court was calling Mr. Burns, he said, I'm Dr. Burns. He was represented by counsel then, so clearly he was not afraid to interrupt proceedings when he wanted to be called the proper name. Sure, but he was also being addressed at that point as Dr. Burns. I'm sorry, he was being addressed by the court at that point. And so the difference here is whether Dr. Burns felt that he could speak when not being spoken to versus speak to the court while he was being addressed. But I've done numerous trials in my career on the trial court, and anytime a defendant tried to address the court in the middle of a trial, I mean, that's highly improper. I mean, unless the trial court just went completely off the wall and created some sort of prejudice, I mean, that's just not proper to have a defendant start addressing the court in the middle of a trial unless he's pro se, and he was not. Yes, Justice Bui, and that is exactly Dr. Burns' argument. I'm sorry, and I think I cut Justice Vaughn off. I think he was trying to ask a question. I didn't recall that the court was addressing Dr. Burns. I thought I was talking to Dr. Burns' counsel and referred to him as Mr. Burns, and then that's when Dr. Burns jumped in and said, it's Dr. Burns, not Mr. Burns. I didn't think the court was addressing the defendant. I thought the court was addressing his attorney during that exchange. Sure, and I am happy to, during my rebuttal, address that particular portion of the record. Right. I was trying to look through my notes. I didn't see this exact exchange, so maybe if you can find that and bring that to our attention in the rebuttal, that would be great. Thank you.  Thank you, counsel. Ms. Wray, go right ahead. Thank you, Your Honor. May it please the court, counsel, I'm Becky Wray, representing the people in this cause. I would like to stand on my brief as to Issue 1, as we've already established, and I will argue Issue 2, the defendant's claim of ineffective assistance of counsel. There was no contemporaneous objection when defense counsel rested without calling Dr. Burns to the stand. Dr. Burns was present when defense counsel rested. He was also present for the jury instruction conference, where his counsel indicated to the court that the paragraph discussing whether the defendant would or would not testify would need to be removed from the case. When the defense counsel withdrew from the jury instructions, counsel was very blunt in saying that will have to come out. So, not only did the defendant know at the time of the jury instruction conference that he was not going to be testifying, he also knew when defense counsel rested without calling him to the stand that he would not be testifying, and he was silent both times. That silence was acquiescence in counsel's representation that the defendant would not testify, and he did not assert that at any time during the trial. Additionally, despite counsel's representations otherwise, he did not promptly address this at his first appearance after the trial. He appeared on July 25, 2017, before the court. He was represented at that time. He answered the court's questions when he was spoken to, and then defense counsel was allowed to withdraw at that time, and the defendant continued to speak with the court. So, Dr. Burns, excuse me, Dr. Burns communicated with the court both at times when he was represented by counsel and not represented by counsel, and he didn't seem to differentiate at that time that it was important not to have outbursts in court when he was or was not spoken to. As I indicated in my brief, he corrected the court when he was spoken to by Mr. Burns. He said it's Dr. Burns, and when the court said okay, then the defendant again said, I'm Dr. Burns, and that can be found in the record at 722 if the court wants to take a look at that. I believe Justice Vaughn wanted that citation. So, arguably, when the court just said okay, there was no question posed to Dr. Burns, but he was adamant that he be addressed by his proper professional title at that time. If he had been nearly as concerned about testifying on his own behalf at trial as he was about just correcting, you know, a mere misstatement of his courtesy title versus professional title, surely he would not have been so cowed that he could have not spoken up at that time. He might have received a rebuke from his attorney, but clearly he didn't care to correct the court, and arguably the court had a higher stature at that point than Mr. Drew, who was representing Dr. Burns. So, I can't imagine. I mean, it's illogical to think that Dr. Burns wouldn't have at least said something to his counsel at that point if he had wanted to testify, but there's no indication that there was any discussion, that he raised an objection to that whatsoever. And I would like to turn now to the issue of remand. Defense counsel's point is well taken that the state did not cite any authority for what they essentially are arguing would be piecemeal on these claims. However, the court does not have to ignore the record in this case. And the record in this case, as I just argued, clearly shows there was no contemporaneous objection to Dr. Burns not being allowed to testify. He didn't raise that objection. So, sorry, I lost my train of thought there for a minute. So, the court can look at that and decide whether or not, in looking at the trial court's rulings, the trial court ruled on the merits in that case. And there was no argument about forfeiture or waiver or procedural default whatsoever by the state, by the defense attorney. It was an argument made on the merits. And to argue just because we've conceded on the first issue that that post-conviction counsel was unreasonable for not attaching those evidentiary affidavits. There was no evidentiary affidavits that needed to be attached to the second issue of ineffective assistance of counsel. Not likely that post-conviction counsel would have been able to receive that because the only affidavit that would have been available would have been from Mr. Drew himself. And he doesn't have to allege his own ineffectiveness. And the court opinions are supportive of that. That defendant doesn't have to attach that when the only witness is trial counsel himself. And Dr. Burns didn't allege any other witnesses that would have known whether or not he could testify at or had been told he could or could not testify at trial. So, there was no affidavits for post-conviction counsel to seek on that issue. This case is distinguishable from Addison because in Addison it was dismissed because of forfeiture. And there was no indication that the case here was dismissed because of forfeiture. The trial court considered the merits and found that this claim was lacking, that there was no ineffective assistance for not calling him to testify for the reasons I've already stated. With regard to whether or not this court can find that the trial court properly dismissed the ineffective assistance of counsel claim, while still remanding the previous claim about not attaching the evidentiary affidavits in support of his compulsion defense, I could not find any cases where the courts have addressed that directly. Precedent might be that they remand the whole thing, but there's been no court that has said it cannot be done. So, there's no guidance either way on this. I did find an unpublished, unpersuasive case from 2012 where the court did that, did just what I'm arguing that the court can do here. But again, not binding, not persuasive. And no binding or persuasive authority apparently exists for this issue. But again, the reason that post-conviction counsel was ineffective as to the first issue is because there was evidentiary affidavits that had to be attached. That was not the case for the second issue of ineffective assistance. The ineffective assistance claims were before the court, and the record shows that there was no contemporaneous objection by Dr. Burns at wanting to testify, and he had ample opportunities to do that. July 25th, August 29th, July 20th, 22 is when he corrected the court. I'm sorry, I may have that data incorrect on there. But he corrected the court, and still those times he didn't say anything about wanting to testify. And his post-trial motion also didn't say anything about wanting to testify. And there was no issue raised by him or by counsel that post-trial motion counsel was ineffective. Excuse me. Sorry about that. This case is analogous to People v. Cleveland. Like in that case, the defendant there had asserted that his counsel had rebuked him, and he didn't know he could address the court. The Cleveland court rejected that, noting that while defendant was represented by counsel, he addressed the court during sentencing. That's similar to this case. While Dr. Burns was represented by counsel, he addressed the court at the July 25th hearing. He addressed the court at the July 20th, 22 hearing. When he was represented by counsel, that's when he corrected the court. At the August 29th, 2017 hearing, he also spoke to the court at a time when he thought he was represented. So clearly, it didn't matter to him. He would speak to the court whether he was or was not represented. Yet he did not do so and assert that he had wanted to testify. He also, very importantly, did not assert that he was prohibited from testifying, only that he had received poor legal advice and that he should have taken the stand. That right there points to trial strategy, and that is why the trial court was correct in dismissing this. I'm sorry. I'm done with my argument. I would ask the court affirm as to the dismissal of the ineffective assistance of counsel claim. Thank you. As I counsel, if you need to get a quick drink of water and then finish up, go right ahead. I think I've addressed everything that I needed to, but I will happily entertain the court's questions if you have any. Justice Vaughn, Justice Scholar, do you have any questions? No questions. No questions. I do appreciate her pointing me to 722 of the record. That was during a direct conversation between the court and Dr. Burns. I think the court asked, it's what Mr. Turpin said, correct, Mr. Burns? And he said, that's Dr. Burns, right? I'm Dr. Burns. So, it was during a direct conversation between the two, and I appreciate Ms. Ray pointing that out. You're welcome. I will not need to address that since it's been addressed. Thank you. Well, thank you, counsel. Ms. Sansare, go right ahead with your rebuttal. Thank you. I just have a few points. First, the state noted in its substantive argument of ineffective assistance for preventing Dr. Burns from testifying, it noted that there's no indication of a discussion with counsel that prevented Dr. Burns from testifying. That's precisely why we need a third stage evidentiary hearing. As the state also noted, counsel is not required to submit an affidavit at second stage alleging his own ineffectiveness, which again goes to why a third stage evidentiary hearing is needed for this claim. And moving to the attempt for the state to ask this court to remand some while affirming the dismissal of other claims, there is absolutely no authority that allows for that, and it's actually contradicting Illinois Supreme Court precedent. Addison is very clear that regardless of the merits of the claims, remand is necessary when there is unreasonable assistance of counsel. And the distinction the state makes between the dismissal in, or I'm sorry, the issue in Addison being one of waiver, Addison does not stand for the proposition that that is the only situation where remand is required for unreasonable assistance. It's simply one situation, one illustration of when counsel is unreasonable. And so even though there were no waiver or procedural arguments in this case, that does not, that is not a, that's a distinction without a difference here. And additionally, one, something I did not address in my opening, but is prevalent in Addison, is counsel's insufficient 651C certificate, which I argued in my opening brief and in my reply, just not in my opening argument this morning. But counsel's 651C certificate was insufficient. He did not affirm that he attached, that he made necessary amendments to the petition. And indeed he did not. As the state has conceded, he did not attach the necessary affidavits. Additionally, counsel admitted on the record several times that he was ignorant of post-conviction proceedings, that he had a lack of experience. And he actually admitted to the court that he did not know that Dr. Burns needed to have his own affidavit attached to the petition. And additionally, Addison stands for the proposition, and as does People v. Turner, that we cannot have confidence in the proceedings as a whole when there is unreasonable assistance. So we cannot have faith in any portion of this second stage proceeding because of how unreasonable counsel was in his representation of Dr. Burns. Let me ask you this. The second amended petition that was filed did not have affidavits from the cellmates, but it did have Dr. Burns' affidavit on the second amended petition. In Dr. Burns' affidavit, he says what his cellmates would have testified to. How is that not sufficient? Do you have to have the actual affidavits of the cellmates or an explanation as to why those could not be attached? Or is Dr. Burns' assertion of what they would testify sufficient? For the substantive claim or the unreasonable claim? For the substantive claim. I think Dr. Burns' assertion of what they would have testified to is sufficient here where there's nothing in the record rebutting. But it's also clear under case law that the attorney is supposed to attach these affidavits. Granted, he did not attach any affidavits the first time, but when he filed the amended petition, he had Dr. Burns' affidavit. So why is that not enough? So I see I'm out of time. Can I go right ahead and finish? So the council actually did not ever attach an affidavit. If you look at what was attached to the amended petition and the second amendment petition, it's just Dr. Burns' signature. There's no notarization, so it's not an affidavit. But there were four exhibits attached. There was a couple of transcripts and the letter from Nick Brown to the jail administrator. I may be misremembering that. And also an affidavit from Dr. Burns. Now, we had trouble finding them because they were not attached in our record. They were listed as exhibits. They weren't in the common law record. But once we found them, there were four exhibits referenced in the amended petition, and we were able to find those. So there were there were two transcripts, a letter and Dr. Burns' affidavit. Is that is that not correct? His affidavit affirming what is said in the petition is true or his affidavit? His affidavit that the petition was true and that what his cellmates would have testified to, if I remember correctly. I do not remember seeing his affidavit in the record from him. All right. Now, it sounds like it may be a bit hidden and difficult to find. You said, Justice Vaughn, because I'm sure counsel would probably like to take a look at that. You said that was in the exhibits. Yes. I'm not saying that she didn't look. I'm just saying maybe, you know. I couldn't find my clerk thought at first there were no affidavits ever attached. And we were scouring the record trying to find him. And finally, it wasn't attached. A lot of times there'll be the petition and the in the common law record. That's part of what's scanned in. But in this case, it was under a whole separate directory of exhibits. And we had to look because the petition alleges attached for exhibits A, B, C, and D. And we had to look pretty hard to find where those were. We finally found them in the list of exhibits, that directory. I am going through the exhibits right now. They are E7 through 17. I think it's exhibit D, E21 through E27, maybe. I don't mean to speak out of turn, but that is correct. There's an affidavit of defendant in support of his amended post-conviction petition starts at E21. Thank you, counsel. Sure, I do see this now. Justice Vaughn, could you repeat what your question was? I think I was saying since he does say in their Dr. Burns affidavit says what Ron Brown or Ronald Yarbrough and Nick Brown would have said, is it necessary to then have their affidavits attached? Or is Dr. Burns affidavit saying what other witnesses would say? Is that sufficient to meet the requirement of attaching affidavits or explanation of why they're not attached? No, that is not sufficient for not attaching the affidavits or explaining why they're not attached. But it could be sufficient to establish a constitutional violation. So it could be enough to move to third stage, but it does not satisfy counsel's duty to provide reasonable assistance. Right. Thank you. Thank you, counsel. Justice Schiller, Justice Vaughn, any final questions before we let counsel go for the day? No questions. I think I've confused things enough. Well, obviously, counsel, we will take the matter under advisement. We will issue an order in due course, and we wish you all a great day. Take care.